IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| WILFRED L. LEE, JR.<br><br>Plaintiff,<br><br>v.<br><br>RISING PHOENIX HOLDINGS CORP., *et al.*,<br><br>Defendants. | Case No. 25-cv-00083-DKW-RT<br><br>**ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS**[1] |

On May 15, 2025, Defendant Kristi Noem, Secretary of the Department of Homeland Security ("DHS"), filed a motion to dismiss *pro se* plaintiff Wilfred L. Lee's First Amended Complaint. Dkt. No. 35. On June 23, 2025, Defendants Rising Phoenix Holdings Corporation, Tidal Basin Group, and TB Customer Relations LLC[2] (the "Corporate Defendants") filed a separate motion to dismiss. Dkt. No. 39. Finally, on June 23, 2025, Defendants Brooke Fisher, Traci Thompson, Melissa

---

[1]Pursuant to Local Rule 7.1(c), the Court finds these matters suitable for disposition without a hearing.

[2]Lee names Tidal Basin Group as a separate Defendant but, as the Corporate Defendants point out, "Tidal Basin Group" is merely a trade name of Defendant TB Customer Relations, LLC. *See* Dkt. No. 39-1 at 20. Lee agrees with this: in his Amended Complaint, Lee states that the "correct legal entity is TB Customer Relations, LLC" and that he merely uses the name Tidal Basin Group "for continuity." Dkt. No. 13 at 3 n.1. Because Lee acknowledges that Tidal Basin Group and TB Customer Relations are one and the same, and uses them interchangeably in his Amended Complaint, the Court treats them as a single Defendant for the purposes of the motion to dismiss and will refer to them collectively as "Tidal Basin."

1

Burke, Tiffany Niles, and Lori Nichols (the "Individual Defendants") moved to dismiss as well.  Dkt. No. 43.  The three motions have been fully briefed, with Lee opposing all of them.[3]  Dkt. Nos. 37, 50, 52.

Having reviewed the First Amended Complaint, the parties' briefs, and the relevant legal authorities, the Court agrees that dismissal is appropriate. Accordingly, the motions to dismiss are GRANTED with partial leave to amend, as described below.

## BACKGROUND

### I.    The First Amended Complaint[4]

FEMA contracted with Tidal Basin to provide disaster management services, including for the Lahaina, Maui fires that occurred in August 2023.  Rising Phoenix is Tidal Basin's parent company.  In August 2023, Tidal Basin hired Lee to remotely supervise Maui fire call center operators.  In this role, Lee reported to Thompson. Dkt. No. 13 ¶¶ 16–17, 19, 29, 35.

In October 2023, Lee inquired with Thompson about an assistant manager position.  *Id*. ¶ 36.  Lee was ignored, whereas other temporary supervisors—such as Fisher, a white female—were promoted to managerial roles above Lee.  *Id*. ¶ 38.

---

[3]The three groups of Defendants have stated no opposition to each other's motions to dismiss. *See generally* Dkt. No. 45.
[4]The factual background is derived from Plaintiff's Amended Complaint, *see generally* Dkt. No. 13, with the facts therein assumed to be true for purposes of these Fed.R.Civ.P. 12 motions only.

Lee, who is an African-American male, alleges this was due to racial discrimination. *Id*. ¶ 15, 37.

Lee also notified Thompson and Niles (both employees of Tidal Basin or Rising Phoenix) of a "vision impairment caused by prolonged computer screen use," for which he requested an unspecified accommodation. *Id*. ¶¶ 45–47. Tidal Basin and Rising Phoenix denied the accommodation request "without engaging in meaningful discussions." *Id*. ¶¶ 47–49. Following Lee's accommodation request, Thompson "subjected Plaintiff to retaliatory treatment," including greater scrutiny on his job performance, micromanagement, and "[u]nfounded allegations." *Id*. ¶¶ 59–64.

By November 2023, one of the operators whom Lee supervised filed an internal complaint against him, claiming that Lee had unfairly "questioned her training and competency." *Id*. ¶ 134. In response, Fisher cautioned Lee about his "tone in chat-based interactions with female agents"—concerns Lee insists were "disproportionate and unwarranted." *Id*. ¶ 135. Fisher also began "scrutinizing Plaintiff's work at an excessive level," making "abrupt and condescending directives," and "required Plaintiff to immediately report task conditions," none of which were demanded of non-African American employees. *Id*. ¶ 150. Fisher also denied support to Lee's team and undermined his authority by giving contradictory

instructions to Lee's agents and refusing to give Lee "equal managerial discretion." *Id*. ¶¶ 74, 76.

Around November 2023, Lee "personally observed widespread timekeeping fraud" by other employees, but Thompson and Fisher "selectively enforced disciplinary action" against Lee "based on race." *Id*. ¶¶ 68–69.

On November 21, 2023, Lee filed an EEOC complaint against Fisher. Dkt. No. 13 ¶ 89. Lee states that he alleged "discriminatory treatment . . . in violation of Title VII" within this complaint, *id*., but does not specify the exact claims or how the Fisher complaint was resolved. On the same date, Lee filed an EEOC complaint[5] against Rising Phoenix,[6] claiming disability and racial discrimination and retaliation.

---

[5]Lee's First Amended Complaint states only that he filed a "charge of discrimination" with the EEOC in November 2023, but fails to elaborate on which Defendants were the subject of this complaint or what claims were presented. Dkt. No. 13 ¶ 9. The Corporate Defendants, however, describe this complaint as presenting racial discrimination claims against Rising Phoenix in their motion to dismiss, and provided the Court with a copy reflecting as much. Dkt. Nos. 39 at 4–5; 39-4. Typically, a court must limit its analysis to the complaint when deciding a motion to dismiss, but may incorporate by reference other materials when they are referred to by the plaintiff and "form[ ] the basis of the plaintiff's claim." *U.S. v. Ritchie*, 342 F.3d 903, 907–08 (9th Cir. 2003). Given that Lee's First Amended Complaint refers to the November 2023 EEOC complaint, which relates to the exhaustion of his claims, the Court incorporates the EEOC complaint by reference and considers it as part of the pending motions.

[6] The Court notes that the EEOC complaint lists only "Rising Phoenix", not Tidal Basin, as Lee's employer. Dkt. No. 39-4. Lee references "TB Customer Relations" in his EEOC complaint but did not make clear that his charges were leveled at Tidal Basin as well as Rising Phoenix. *Id*. The Corporate Defendants briefly argue that this vagueness means Lee failed to adequately exhaust his administrative remedies against Tidal Basin. Dkt. No. 39-1 at 7–8. However, "EEOC complaints are liberally construed," *Assaye v. United Airlines, Inc.*, No. 17-CV-00495 (DKW)(KSC), 2018 WL 1975678, at *8 (D. Haw. Apr. 26, 2018), and courts will consider "allegations of discrimination not included in the plaintiff's administrative charge" where those claims are "like or reasonably related to the allegations contained in the EEOC charge," *B.K.B. v. Maui Police*

*Id*. ¶ 9; Dkt. No. 39-4.  On November 30, 2023, Lee "formally escalated his complaint by reporting Defendant Fisher" to Tidal Basin's vice-president for "race-based discrimination."  Dkt. No. 13 ¶¶ 93–94.

According to Lee, his EEOC complaints caused Fisher to retaliate by belittling him to his supervisees, excluding him from discussions, and applying different work standards to him that were not applicable to non-African American supervisors.  *Id*. ¶ 92.  Other Defendants reacted similarly by "failing to provide support from upper management."  *Id*. ¶ 78.

On December 1, 2023, Thompson and Burke met with Lee to discuss "timekeeping inaccuracies" and "complaints by agents."  *Id*. ¶ 80, 96.  Immediately after the meeting, Lee was placed on paid suspension.  *Id*. ¶¶ 80, 98.  Nichols and Niles, representing human resources, "ratified the discriminatory conduct" by failing to intervene in Lee's suspension.  *Id*. ¶ 162.

---

*Dep't*, 276 F.3d 1091, 1100 (9th Cir. 2002) (internal citation omitted), *as amended* (Feb. 20, 2002), *overruled on other grounds by Fort Bend Cnty., Texas v. Davis*, 587 U.S. 541 (2019).

Here, the allegations of racial and disability discrimination, retaliation, and failure to accommodate in Lee's EEOC complaint against Rising Phoenix are substantially the same as those he details in his First Amended Complaint.  *Compare* Dkt. No. 39-4 at 1–2 *with* Dkt. No. 13.  The Corporate Defendants indeed acknowledge that Lee likely intended his EEOC claims to be made against Tidal Basin, Dkt. No. 39-1 at 7–8, and the Court agrees that the non-specific nature of the EEOC complaint likely stems more from unfamiliarity with the complaint forms than an intent on Lee's part to limit his claims, *see B.K.B.*, 276 F.3d at 1103 ("We must keep in mind that complainants filing discrimination charges are acting as laypersons and should not be held to the higher standard of legal pleading by which we would review a civil complaint[.]").  Accordingly, the Court finds that the EEOC complaint sufficed to exhaust Lee's administrative remedies with respect to the Corporate Defendants, except as discussed below.

On December 9, 2023, the Corporate Defendants lifted Lee's suspension, but demoted him to a non-supervisory call center position. *Id*. ¶ 54. Finally, on January 4, 2024, Tidal Basin terminated Lee's employment. *Id*. ¶ 85.

Lee claims that his suspension, demotion, and termination were in retaliation for his accommodation request and race-discrimination complaints. *Id*. ¶¶ 78, 105. Other employees who "engaged in . . . timekeeping discrepancies" but "were not known to have disabilities" were not subjected to the same treatment. *Id*. ¶¶ 51–52. Similarly, non-African American employees were "permitted to submit inaccurate timesheets without consequence," while African American supervisors "were subjected to heightened scrutiny, discipline, and ultimately termination." *Id*. ¶ 69.

On September 5, 2024, Lee initiated contact with an EEOC counselor, who notified him of his right to file a formal complaint. *Id*. ¶ 11. On October 26, 2024, Lee filed an EEOC complaint against FEMA, detailed in his First Amended Complaint. *See* Dkt. No. 13-1 at 3. The FEMA complaint reflects that Lee asserted claims of retaliation and discrimination based on race, color, religion, sex, and age. *See generally id*. On December 10, 2024, the EEOC dismissed the complaint against FEMA for failure to state a claim. *Id*. On January 30, 2025, the EEOC issued Lee a right-to-sue letter. *Id*. at 1.

6

## II.    Procedural History

On February 25, 2025, Lee initiated this action.  Dkt. No. 1.  In April 2025, he filed his First Amended Complaint.  Dkt. No. 13.  Lee asserts the following claims: (1) race discrimination in violation of Title VII (Count I); (2) disability discrimination in violation of the ADA (Count II); (3) failure to accommodate in violation of the ADA (Count III); (4) gender discrimination in violation of Title VII (Count IV); (5) racial discrimination in violation of 42 USC § 1981 (Count V); (6) retaliation in violation of Title VII (Count VI); (7) retaliation in violation of the ADA (Count VII); (8) retaliation in violation of 42 USC § 1981 (Count VIII).  Dkt. No. 13 at 28.  Counts I, II, III, IV, VI, and VII are only alleged against the Corporate Defendants, whereas Counts V and VIII are alleged against all Defendants.  *Id*.

### a.    DHS' Motion to Dismiss

On May 15, 2025, DHS moved to dismiss the First Amended Complaint for lack of jurisdiction, arguing that (1) DHS did not employ Lee; (2) Lee failed to timely exhaust administrative remedies for his ADA and Title VII claims[7] against DHS; (3) the ADA does not apply to federal agencies like DHS; and (4) Section 1981 does not provide a cause of action against federal officials.  Dkt. No. 35.

---

[7]DHS' motion addresses Lee's ADA and Title VII claims, despite the First Amended Complaint stating that such claims were directed only against the Corporate Defendants.  *See* Dkt. No. 13 at 28.  Accordingly, despite Lee's failure to acknowledge the limits of his pleadings in his opposition brief, *see* Dkt. No. 37, the Court substantively addresses only Lee's Section 1981 claims against DHS.  No other claims against DHS exist.

Among other things, DHS provides the declaration of a FEMA attorney-advisor who states that no contract existed between FEMA and the Corporate Defendants regarding a call center relating to the 2023 Maui fires and surmises that the Corporate Defendants may have contracted with the state government for call center services. Dkt. No. 38-2.  Lee opposes, arguing that the Corporate Defendants were merely "front companies carrying out FEMA's operational goals," and that the Corporate Defendants' "coordinated obstruction" justified equitable tolling of the 45-day deadline to exhaust his administrative remedies.  Dkt. No. 37.  DHS replies, reiterating that Lee did not work for DHS and failed to timely exhaust, and that Lee did not respond to DHS' remaining arguments.  Dkt. No. 38.

The Court directed the parties to file supplemental briefs addressing Lee's Section 1981 claims against DHS, specifically with respect to any "specific contracts" between DHS and the Corporate Defendants.  Dkt. No. 47.  Lee did not identify any specific contract, instead arguing that he supervised the internal FAQ system and document intake for FEMA, tasks which put him "within the scope of FEMA's delegated federal functions" for the purposes of the Freedom of Information Act ("FOIA") and in turn subjected DHS to liability under Section 1981. Dkt. No. 48.  DHS (1) reiterated that no contract existed between DHS and the Corporate Defendants; and (2) DHS's liability under FOIA was wholly unrelated to their liability under Section 1981.  Dkt. No. 49.

8

### b.    The Corporate Defendants' Motion to Dismiss

On June 23, 2025, the Corporate Defendants moved to dismiss, arguing that (1) Lee's gender discrimination claims are unexhausted; and (2) Lee fails to plausibly state his remaining claims.  Dkt. No. 39-1.  Lee opposes, responding that he adequately alleged specific facts to support his claims.  Dkt. No. 50.  The Corporate Defendants reply, repeating that Lee failed to state a claim and asserting that Lee did not dispute his failure to exhaust his gender discrimination claims.  Dkt. No. 53.

### c.    Individual Defendants' Motion to Dismiss

On June 23, 2025, the Individual Defendants moved to dismiss, arguing that Lee's generalized and conclusory allegations failed to state claims of racial discrimination or retaliation under Section 1981.  Dkt. No. 43.  Lee opposes, providing a copy of the Rising Phoenix employee handbook to demonstrate that his termination did not follow typical company policy.  Dkt. Nos. 52, 52-2.  He further requests that because he provided said handbook, the Court should "treat the motion [to dismiss] as one for summary judgment" and permit discovery.  Dkt. No. 52 at 1–5.  The Individual Defendants reply that Lee failed to oppose their arguments for dismissal and his request to convert the motion to dismiss into a motion for summary judgment should be denied.  Dkt. No. 55.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) authorizes the Court to dismiss a complaint that fails "to state a claim upon which relief can be granted." Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). Pursuant to *Ashcroft v. Iqbal*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In addition, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft*, 556 U.S. at 678. Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Factual allegations that only permit the court to infer "the mere possibility of misconduct" do not show that the pleader is entitled to relief as required by Rule 8(a)(2). *Id.* at 679.

When a complaint fails to state a plausible claim, leave to amend should be given when "justice so requires." Fed.R.Civ.P. 15(a)(2). Indeed, the Ninth Circuit has made clear that "a district court should grant leave to amend even if no request

to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (citations and quotation marks omitted). "[T]he rule favoring liberality in amendments to pleadings is particularly important for the *pro se* litigant." *Id.* at 1131 (citation and internal quotation marks omitted). However, justice does not require leave to amend when (1) it would prejudice an opposing party, (2) it is sought in bad faith, (3) it would produce an undue delay in litigation, (4) it would be futile, or (5) there has been repeated failure to cure a deficiency. *Abagninin v. AMVAC Chem. Corp.*, 545 F.3d 733, 742 (9th Cir. 2008); *AmerisourceBergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946, 951 (9th Cir. 2006).

The Court liberally construes a pro se pleading. *Eldridge v. Block*, 832 F.2d 1132, 1137 (9th Cir. 1987). However, the Court cannot act as counsel for a pro se litigant, such as by supplying the essential elements of a claim. *Pliler v. Ford*, 542 U.S. 225, 231 (2004); *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

## DISCUSSION

Three motions to dismiss are pending before the Court, each advanced by a different group of Defendants. Dkt. Nos. 35, 39, 43. The Court addresses the arguments of each motion in turn.

## I.    DHS

In Counts V and VIII, Lee alleges that DHS is liable for racial discrimination and retaliation under Section 1981.  Dkt. No. 13 at 28.  Because Lee cannot state a Section 1981 claim against DHS under the circumstances alleged, the Court grants DHS' motion to dismiss without leave to amend.

Lee's Section 1981 claim against DHS fails for several reasons.  First, the Amended Complaint does not state how, if at all, DHS discriminated against Lee. Lee refers to DHS only by baldly claiming that the agency "oversaw federal contracts and funding" related to Lee's employment and "participated in operational meetings and were aware of staffing decisions affecting Plaintiff."  Dkt. No. 13 ¶¶ 158, 190.  Bare allegations like these, devoid of any detail, provide the Court little with which to draw any inference of liability.  *Ashcroft*, 556 U.S. at 678; *see also Bowling v. Diamond Resorts Int'l, Inc.*, No. 17-CV-00562, 2018 WL 3244068, at *7 (D. Haw. July 3, 2018) ("[A] conclusory allegation that [d]efendants were plaintiff's joint employer  . . . is insufficient to withstand a Rule 12(b)(6) motion." (internal quotation marks and alterations omitted)).  Second, at the June 27, 2025 hearing on DHS' motion, the Court explained the importance of identifying a specific contract that formed the basis of Lee's Section 1981 claim.  When Lee could not offer one, the Court gave Lee, proceeding *pro se*, an extra opportunity.  Dkt. No. 47.  Lee, however, failed again—his supplemental brief ignores the obligation to identify a

contract and instead speaks only vaguely of a relationship between the Corporate Defendants and FEMA.  Dkt. No. 48.   Absent any nonconclusory allegations tying DHS to the discriminatory application of a contract, Lee fails to adequately state a claim.

Third, even assuming Lee could identify the requested contract, his Section 1981 claims against DHS would still fail.  Section 1981 grants all citizens of the United States "the same right in every State or Territory to make and enforce contracts . . . as is enjoyed by white citizens."  42 U.S.C. § 1981.  It further states, however, that "rights protected by this section are protected against impairment by *nongovernmental discrimination* and impairment under color of *State* law."   42 U.S.C. § 1981(c).  Courts have universally found that Section 1981 provides no cause of action for claims of discrimination against federal defendants.  *See Magassa v. Mayorkas*, 52 F.4th 1156, 1162 (9th Cir. 2022) ("The plain text of the statute establishes that § 1981 does not provide a cause of action for discrimination by federal officials acting under color of federal law."); *see also Nelson v. Everson*, No. C07-0707 (RSL), 2007 WL 1893327, at *2 (W.D. Wash. June 29, 2007) ("[T]he majority of courts have barred Section 1981 suits against the [federal] government."); *Espinueva v. Garrett,* 895 F.2d 1164, 1165 (7th Cir. 1990) ("Section 1981 does not apply to employment discrimination cases involving the federal government").  Here, Lee claims that DHS, a federal defendant, acted under color of

federal law to discriminate and retaliate on the basis of race in violation of Section 1981.  Accordingly, his claims would fail even if they were otherwise sufficiently pled.

Moreover, further amendments will not change the fact that Section 1981 provides no cause of action against DHS.  *See Jass v. CherryRoad Techs., Inc.*, 449 F. Supp. 3d 923, 941 (D. Haw. 2020) ("Dismissal without leave to amend is appropriate where a plaintiff's proposed amendments would fail to cure the pleading deficiencies and amendment would be futile." (internal quotation marks omitted)); Dkt. Nos. 47-48.  The claims against DHS are dismissed with prejudice and without leave to amend.

## II.    The Corporate Defendants

Lee asserts all eight of his claims against the Corporate Defendants, who argue that each fails to satisfy Fed.R.Civ.P. 12(b)(6).  The Court agrees, as explained below.[8]

---

[8]As the Corporate Defendants point out, Lee does not differentiate between the conduct of Tidal Basin and Rising Phoenix, either stating that both were responsible for all adverse employment actions and discrimination against him or referring to them simply as "Defendants".  *See generally* Dkt. No. 13.  Because Lee appears to assert that his claims all stem from conduct that Tidal Basin and Rising Phoenix undertook jointly, the Court's discussion applies to the claims against both Corporate Defendants, unless otherwise stated.

14

### a. Title VII Claims

#### i. Racial Discrimination

Section 703(a)(1) of Title VII provides that it is "an unlawful employment practice" for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race." 42 U .S.C. § 2000e–2(a)(1).  Here, Lee does not allege that he was subjected to any explicit racial animus, such as derogatory remarks relating to his race.  Instead, he claims that similarly situated, non-African American employees of the Corporate Defendants were promoted in place of him and not subjected to critique, discipline, or termination despite committing timekeeping errors similar to the ones he appears to acknowledge having made.  Dkt. No. 13 ¶¶ 37, 38, 81, 84.

"Evidence that similarly situated employees are treated more favorably is one way to establish intentional discrimination" in the Title VII context, specifically in the form of a disparate treatment claim.  *Marziano v. Cnty. of Marin*, No. C-10-2740 (EMC), 2010 WL 3895528, at *7 (N.D. Cal. Oct. 4, 2010).  A plaintiff establishes a prima facie case of disparate treatment discrimination by showing: (1) that he belongs to a class of protected persons; (2) that he was qualified for his position and performed his job satisfactorily; (3) that he suffered an adverse employment action; and (4) that the employer treated him differently than a similarly situated employee who does not belong to the same protected class.  *See McDonnell Douglas Corp. v.*

*Green*, 411 U.S. 792 (1973); *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1028 (9th Cir. 2006) (*McDonnell Douglas* framework applies to Title VII claims).

"A disparate-treatment plaintiff must establish that the defendant had a discriminatory intent or motive for taking a job-related action." *Ricci v. DeStefano*, 557 U.S. 557, 577 (2009). "Thus, a plaintiff bringing a disparate treatment claim must allege facts that plausibly indicate defendant was motivated by a discriminatory animus." *Wilson v. Timec Servs. Co., Inc.*, No. 23-CV-00172 (WBS)(KJN), 2023 WL 5753617, at *3 (E.D. Cal. Sept. 6, 2023) (internal quotation marks omitted).

Here, Lee's allegations of disparate treatment fail to state a claim for several reasons. First, many of his allegations are conclusory in nature. *See McAllister v. Hawaiiana Mgmt. Co.*, No. 11-CV-00056, 2012 WL 292955, at *8 (D. Haw. Jan. 30, 2012) (granting dismissal of Title VII racial discrimination claims based on "only conclusory allegations"). Lee, for example, states that he was subject to "exclusion or denial of information" when the Corporate Defendants promoted "[n]on-African American supervisors" but gives no further details. Dkt. No. 13 ¶ 37. Lee also fails to allege he was qualified for the positions to which his comparators were promoted. *See Jones v. Rising Phoenix Holdings Corp.*, No. 25-CV-00178, 2025 WL 2802180, at *7 (D. Haw. Oct. 1, 2025) (dismissing disparate treatment claim where plaintiff did "not allege that she was specifically qualified for . . . new positions, the responsibilities of which the complaint does not describe").

16

Baldly stating the elements of a disparate treatment claim is no substitute for plausibly alleging one.

Second, Lee's allegations regarding the allegedly unfair disciplinary actions taken against him undercut any claim of racial animus. Lee claims that non-African American employees of the Corporate Defendants committed timekeeping errors like he did, but were not suspended, demoted, or terminated. Dkt. No. 13 ¶ 69. Yet Lee also identifies another African American employee who "engaged in comparable or greater timekeeping discrepancies" without being disciplined. *Id*. ¶ 52. "The inference of racial discrimination can only arise if there are several workers facing the same situation and *only* the worker (or workers) [of the allegedly discriminated-against race] is/are subject to adverse job action." *Al-Raheem v. Covenant Care*, No. 10-CV-2064, 2012 WL 4863711, at *4 (E.D. Cal. Oct. 12, 2012). That another African American employee allegedly behaved the same as Lee and yet was not punished cuts against any inference of race-based disparate treatment.

Finally, Lee fails to allege that other employees were, in fact, similarly situated. "The cornerstone of the inference of racial discrimination being the cause of disparate treatment is the similarity between the [p]laintiff and a larger group of workers who are facing the *same* situation." *Al-Raheem*, 2012 WL 4863711, at *4 (emphasis added). Here, Lee states that he was disciplined for both timekeeping

discrepancies *and* "complaints from agents" whom he supervised. *Id.* ¶ 80. Lee does not deny he had timekeeping discrepancies, does not deny complaints from his supervisees, and does not allege that anyone else in the Corporate Defendants' employ suffered from both issues, much less what happened to those others in terms of any discipline. Accordingly, he fails to allege sufficient facts relating to any similarly situated employee that might create an inference of racial discrimination. *See Al-Raheem*, 2012 WL 4863711, at *4 (granting dismissal because plaintiff failed to allege that workers of different races had the same work issues as himself).

For these reasons, the Court grants the motion to dismiss Lee's Title VII disparate treatment claims. Because Lee "could conceivably cure these deficiencies," and in light of his *pro se* status, the dismissal is without prejudice and with leave to amend. *Jones*, 2025 WL 2802180, at *7.

### ii.    Retaliation

An employer may not discriminate against an employee because the employee has opposed an employment practice made unlawful by Title VII. *See* 42 U.S.C. § 2000e-3(a) ("It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice [prohibited by Title VII] . . . or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]."); *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 59 (2006) ("Title

VII's anti-retaliation provision forbids employer actions that discriminate against an employee . . . because he has opposed a practice that Title VII forbids or has made a charge, testified, assisted, or participated in a Title VII investigation, proceeding, or hearing." (citations and quotation marks omitted)).

To state a Title VII retaliation claim, a plaintiff must assert (1) that he was engaged in a protected activity opposing an unlawful employment practice; (2) that he suffered an adverse employment action, and (3) that there was a causal link between his activity and the adverse employment action. *Freitag v. Ayers*, 468 F.3d 528, 541 (9th Cir. 2006). Regarding the causation element, the Supreme Court "requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Univ. of Tex. Southwestern Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013) (concluding that a plaintiff making a retaliation claim under Title VII "must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer").

Here, Lee alleges that the Corporate Defendants retaliated "by failing to provide support from upper management," "suspending Plaintiff," demoting him, and terminating his employment in response to his November 2023 racial discrimination complaints against Fisher. Dkt. No. 13 ¶ 78. These allegations alone, however, are not enough to adequately state a claim.

19

While Lee asserts that the disciplinary actions against him by the Corporate Defendants were incited by his racial discrimination complaint, he does not provide any allegations in support of that conclusion beyond drawing a temporal connection. *Cf. Jinadasa v. Brigham Young Univ.-Hawaii*, No. 14-CV-00441, 2015 WL 3407832, at *6 (D. Haw. May 27, 2015) (plaintiff failed to state a claim when he asserted that EEOC filings and adverse employment actions were "connected" but "offer[ed] no factual allegations in support of that conclusory assertion"). In other words, Lee argues that the short length of time between his complaints (November 21 and 30, 2023) and his suspension and demotion (December 1 and 9, 2023) "establishes a strong causal connection between Plaintiff's protected activity and Defendants' retaliatory actions." Dkt. No. 13 ¶ 105.

While it is true that "[t]emporal proximity between protected activity and an adverse employment action can . . . constitute sufficient circumstantial evidence of retaliation in some cases," *Bell v. Clackamas Cnty.*, 341 F.3d 858, 865 (9th Cir. 2003), this does not obviate Plaintiff's obligation to show that his protected activity was the *but-for cause* of the alleged adverse action, *see Santos v. Cnty. of Humboldt*, No. 24-CV-11256, 2023 WL 6882748, at *6 (N.D. Cal. Oct. 18, 2023) ("While proximity in time between the protected activity and the allegedly retaliatory decision can constitute some evidence of a retaliatory motive or of a causal link . . . the but-for standard cannot be said to have been satisfied here."). Courts must

consider retaliation claims both "in the light of the timing *and the surrounding circumstances*." *Coszalter v. City of Salem,* 320 F.3d 968, 978 (9th Cir. 2003)(emphasis added). Simply put, Lee alleges no "surrounding circumstances" here that suggest his administrative complaints were the cause of the disciplinary actions against him.

First, as noted above, Lee provides no additional allegations suggesting a causal connection. *Ly v. Paragon Tech. & Dev. Inc.*, No. 18-CV-02465, 2019 WL 4394536, at *5 (D. Ariz. Sept. 13, 2019) ("[M]ere temporal proximity to an adverse action doesn't necessarily make a claim plausible, especially where, as here, [plaintiff] hasn't pleaded any additional facts that would make her claims seem more than just conceivable."). Second, Lee alleges that his suspension, demotion, and firing took place in the context of criticism for his timekeeping discrepancies and complaints from the agents he supervised, all of which provide alternative reasons that the Corporate Defendants might have disciplined him. Dkt. No. 13 ¶ 80; *see Santos*, 2023 WL 6882748, at *6 (granting motion to dismiss where but-for standard was not satisfied because a "plethora of other plausible explanations could [] have explained the chain of events surrounding" the adverse employment action). Third, although Lee may claim that his purported work issues were a mere pretext, he states in his Amended Complaint that "another African American supervisor who engaged in protected activity was not terminated," without elaboration. Dkt. No. 13 ¶ 104.

This allegation runs counter to Lee's claim that engaging in a protected activity motivated the Corporate Defendants' alleged adverse employment actions.

In short, Lee's allegations of temporal proximity alone are insufficient to plausibly plead but-for causation under the circumstances presented. *Lacayo v. Donahoe*, No. 14-CV-04077, 2015 WL 3866070, at *12 (N.D. Cal. June 22, 2015) ("The mere fact that the adverse actions took place after plaintiff's protected activity is not sufficient by itself to give rise to an inference of a causal link." (internal quotation marks omitted)). Accordingly, the Court grants dismissal as to Lee's Title VII retaliation claims, without prejudice and with leave to amend.

### iii.    Gender Discrimination

Lee asserts for the first time a claim of Title VII gender discrimination, asserting that the alleged adverse employment actions taken against him were due to his status as a male. Dkt. No. 13 at 28. This claim, however, does not appear in Lee's EEOC complaint against the Corporate Defendants. *See* Dkt. No. 39-4. Title VII requires a plaintiff to exhaust his or her administrative remedies before filing a civil action against an employer, to "afford[] the agency an opportunity to investigate the charge." *B.K.B.*, 276 F.3d at 1100–01 (citing 42 U.S.C. § 2000e-5(b)).

Here, Lee's EEOC complaint identifies racial and disability discrimination, failure to accommodate, and retaliation as the bases of his claims. Dkt. No. 39-4. It does not mention his gender or any allegation of gender discrimination. Although

the Court could consider Lee's gender discrimination claims if they were "like or reasonably related to the allegations contained in the EEOC charge," *B.K.B.*, 276 F.3d at 1100, that is not the case here, given that gender discrimination relies on a wholly different form of improper conduct, *see Rodriguez v. Airborne Express*, 265 F.3d 890, 897 (9th Cir. 2001) ("It would not be proper to expand the claim as [plaintiff] asks, when the difference between the charge and the complaint is a matter of adding an entirely new basis for the alleged discrimination." (internal quotation marks omitted)).

Accordingly, Lee has failed to exhaust his gender discrimination claims against the Corporate Defendants. The claims are dismissed with prejudice and without leave to amend.[9]

### b.    ADA Claims

### i.    Disability Discrimination and Failure to Accommodate

A plaintiff establishes a prima facie ADA discrimination claim by showing: (1) he is disabled within the meaning of the statute; (2) he is a qualified individual (that is, able to perform the essential functions of the job); and (3) he suffered an

---

[9] Amendment of Lee's EEOC complaint to include a Title VII gender discrimination claim would be futile because more than 300 days have passed since his termination in January 2024. *See Sims v. Salem Health Hosps. & Clinics*, 2017 WL 2468786, at *2 (D. Or. June 7, 2017) ("Plaintiff did not exhaust her administrative remedies within the statutory timeline, [therefore] Plaintiff's [Title VII] claim for relief is dismissed with prejudice."); *EEOC v. Global Horizons, Inc.*, 904 F. Supp. 2d 1074, 1090 n.2 (D. Haw. 2012) ("The 300-day limitations period is applicable in this case because Title VII extends the 180-day period to 300 days if filed in a 'worksharing' jurisdiction . . . Hawaii and California are both 'worksharing' states . . .").

adverse employment action because of his disability. *See, e.g., Hutton v. Elf Atochem N. Am., Inc.*, 273 F.3d 884, 891 (9th Cir. 2001) (citations omitted). Discrimination under the ADA includes the failure to make a "reasonable accommodation" unless the employer can demonstrate that the accommodation would impose an "undue hardship" on its business. 42 U.S.C. § 12112(b)(5)(A). ADA discrimination claims are "evaluated under a but-for causation standard," meaning that the plaintiff "must show that the adverse employment action would not have occurred but for the disability." *Murray v. Mayo Clinic*, 934 F.3d 1101, 1105–07 (9th Cir. 2019). To satisfy the but-for standard, a plaintiff must prove that the adverse action "would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013).

Here, Lee alleges that he suffered from a visual impairment that made prolonged use of a computer screen hazardous. He further alleges that the Corporate Defendants failed to accommodate this disability and then suspended, demoted, and terminated him. Dkt. No. 13 ¶¶ 46–53. While Lee's allegations conclusorily state that defendants' adverse actions were due to his disability, *see e.g.* Dkt. No. 13 ¶ 48 ("Defendants regarded Plaintiff as disabled and subjected them [sic] to adverse employment actions based on this perception"), such allegations are not enough to satisfy the but-for causation standard required by the ADA, *see Howell v. Washoe*

*Cnty.*, No. 24-CV-00280, 2025 WL 894552, at *7 (D. Nev. Mar. 24, 2025) (granting dismissal where plaintiff offered only "conclusory allegations" that defendants suspended and discharged him after learning of plaintiff's disability "without supporting facts").

In only two instances does Lee arguably attempt to provide a factual basis for but-for causation.   First, he claims that other, non-disabled employees also committed timekeeping violations but were not subjected to adverse actions.  Dkt. No. 13 ¶¶ 51–52.   As with Title VII, the ADA permits plaintiffs to establish discrimination through evidence of favorable treatment towards similarly-situated, non-disabled employees.  *Marziano*, 2010 WL 3895528, at *7.  Still, however, Lee must do so with non-conclusory allegations.  *See Johnson v. Target*, No. 23-CV-00580 (TUC)(RCC), 2024 WL 579075, at *3 (D. Ariz. Feb. 13, 2024) (finding that comparison to similarly situated employees failed to show but-for causation where plaintiff offered "no information" on other employees "beyond [] conclusory statements").  And, as with his Title VII claims, Lee fails to non-conclusorily allege that other employees were comparable to himself.  Lee, for instance, does not state the nature of the timekeeping violations in which these other employees engaged, when they did so, or whether other employees received complaints from their subordinates in the same way Lee did.  His argument concerning similarly-situated employees is therefore unpersuasive.

Second, Lee points to the lack of an "interactive process" regarding his alleged accommodation request as a sign that the adverse employment actions were due to his disability.  Dkt. No. 13 ¶ 49.  This argument, however, merely reveals another area in which Lee's pleadings are lacking.  It is true that employers have a duty under the ADA to engage in an "interactive process" after an employee notifies them of the need for an accommodation.  *Nunies v. HIE Holdings, Inc.*, 908 F.3d 428, 433 (9th Cir. 2018).  However, failure to engage in the interactive process "is not itself evidence of failure to reasonably accommodate" because "[t]here must first exist a reasonable accommodation that will enable the employee to perform the essential functions of the position."  *Kramer v. Tosco Corp.,* 233 Fed.Appx. 593, 596 (9th Cir. 2007).

Here, Lee does not allege what, if any, accommodation he requested from the Corporate Defendants.  "While such specifics are not always necessary," courts weighing a motion to dismiss will nevertheless look to plaintiff's desired accommodation to determine if "a reasonable accommodation might have been found."  *Murray v. King Cnty.*, No. 25-CV-00600, 2025 WL 2145569, at *3 (W.D. Wash. July 29, 2025).  Lee's failure to explain how the Corporate Defendants could have accommodated his visual impairment is another deficiency in his pleading, one which deprives the Court of its ability to determine if any accommodation was reasonable.  *See id*. at *3–4 (granting dismissal because although "[a] fair reading of

these allegations does not rule out the possibility that a reasonable accommodation might have been found," plaintiffs must nevertheless provide "facts supporting such an inference"); *Kamakeeaina v. Armstrong Produce, Ltd.*, No. 18-CV-00480, 2019 WL 1320032, at *6 (D. Haw. Mar. 22, 2019) (granting dismissal of ADA claim where plaintiff "fail[ed] to allege what accommodation" he requested or was reasonable, as one "cannot [] be inferred from the [c]omplaint").

Accordingly, the Court dismisses Lee's ADA discrimination and failure to accommodate claims, without prejudice and with leave to amend.

### ii.    ADA Retaliation

To allege retaliation under the ADA, a plaintiff must establish "[(1)] that he or she was engaged in a protected activity, [(2)] that he or she suffered an adverse action, and [(3)] that there is a causal link between the two." *T.B. ex rel. Brenneise v. San Diego Unified Sch. Dist.*, 806 F.3d 451, 473 (9th Cir. 2015) (internal quotation marks omitted).  An adverse employment action is any action "reasonably likely to deter employees from engaging in protected activity." *Ray v. Henderson*, 217 F.3d 1234, 1243 (9th Cir. 2000).  As with Title VII, an ADA retaliation claim requires a plaintiff to show his disability was the but-for cause of the alleged adverse action. *See T.B.*, 806 F.3d at 473 (finding that the "more stringent" but-for causation standard applies to ADA retaliation claims).

27

Looking at his allegations relating specifically to the Corporate Defendants, Lee states only that they "subjected Plaintiff to retaliatory treatment" in response to his request for a disability accommodation.  Dkt. No. 13 ¶ 60.  These allegations are simply not enough to survive a motion to dismiss: they state in a conclusory fashion that the Corporate Defendants retaliated without any details as to adverse action or causation.  *See Ashcroft*, 556 U.S. at 678.  Because Lee offers no facts that come close to satisfying the elements of an ADA retaliation claim, dismissal without prejudice and with leave to amend is appropriate, just as with Lee's Title VII retaliation claims (*see* Discussion, Section II(a)(ii)).  *See Petersen v. Cnty. of Stanislaus*, No. 12-CV-00933, 2012 WL 4863800, at *4 (E.D. Cal. Oct. 12, 2012) (dismissing both Title VII and ADA claims for "fail[ing] entirely to allege a causal connection between [p]laintiff's protected reports and protestations and the adverse actions taken against her, beyond [] conclusory statement[s]").

### c.    Section 1981 Claims

Section 1981 "prohibits discrimination in the 'benefits, privileges, terms and conditions' of employment." *Surrell v. California Water Serv. Co.*, 518 F.3d 1097, 1103 (9th Cir. 2008) (quoting, in part, 42 U.S.C. § 1981(b)).  "When analyzing [Section] 1981 claims," courts "apply the same legal principles as those applicable in a Title VII . . . case." *Surrell*, 518 F.3d at 1103 (internal quotation marks and citations omitted).  "As a result, the Title VII framework is applied to claims brought

under Section 1981 . . . including discrimination claims brought under a disparate treatment theory." *Freeling v. PCX, Inc.*, No. 23-CV-00173, 2023 WL 6194259, at *4 (C.D. Cal. Aug. 15, 2023). The same is true for Section 1981 retaliation claims. *See Haney v. United Airlines, Inc.*, No. 15-CV-00474, 2016 WL 80554, at *3 (N.D. Cal. Jan. 7, 2016) ("The same framework [as Title VII] applies to retaliation claims . . . brought under [S]ection 1981.").

The Court has already determined that Lee has failed to properly allege discrimination or retaliation under Title VII. *See* Discussion, Sections II(a)(i), (ii). Because those claims are analyzed under the same framework, it follows that Lee has failed to allege his Section 1981 claims against the Corporate Defendants as well. *See Jones*, 2025 WL 2802180, at *9 (analyzing Title VII and Section 1981 retaliation and discrimination claims under the same standards and dismissing on the same grounds). Accordingly, the Court grants dismissal of the Section 1981 claims against the Corporate Defendants for the same reasons, without prejudice and with leave to amend.

## III.    Individual Defendants

Lee brings only Section 1981 claims against the Individual Defendants,[10] who argue that said claims should be dismissed for failure to state a claim.  The Court agrees.

### a.    Section 1981

A plaintiff asserting a discrimination claim under Section 1981 "must show intentional discrimination on account of race," *Evans v. McKay,* 869 F.2d 1341, 1344 (9th Cir. 1989), and that "but for race, [he] would not have suffered the loss of a legally protected right," *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327, 341 (2020).  A plaintiff therefore must "allege facts showing that each named individual defendant either personally participated in the discriminatory acts or was informed of the wrongdoing of [his] subordinates but was grossly negligent or deliberately indifferent as to their supervision."  *Jones*, 2025 WL 2802180, at 5 (internal quotation marks omitted).

---

[10] The Court notes that the Ninth Circuit has not yet determined whether individual defendants may be liable under Section 1981, in the same manner that ADA and Title VII claims may not be brought against individuals.  However, "other circuit courts and district courts in the Ninth Circuit have determined individuals may be held liable for violations of rights provided under Section 1981."  *McAllister v. Adecco USA Inc.*, No. 16-CV-00447, 2018 WL 6112956, at *13 (D. Haw. Nov. 21, 2018), *aff'd sub nom. McAllister v. Brunk*, 812 F. App'x 708 (9th Cir. 2020) (internal quotation marks omitted); *see also Jones*, 2025 WL 2802180, at 5 n.3 (analyzing Section 1981 claims against individuals).

A plaintiff asserting a retaliation claim under Section 1981 must "allege facts that, taken as true, would plausibly show that [he] was retaliated against either because [he] made a complaint of race-based discrimination or because [he] 'complained about a violation of another person's' right to be free from such discrimination." *Jones*, 2025 WL 2802180, at *8 (quoting *CBOCS Wests, Inc. v. Humphries*, 553 U.S. 442, 445 (2008)).  Retaliation under Section 1981 follows the same standards for causation as Title VII: "[t]he protected activity must be the but-for cause of the adverse employment action." *Romero v. Tucson Unified Sch. Dist.*, No. 20-CV-00507, 2022 WL 1491104, at *5 (D. Ariz. Apr. 22, 2022), *report and recommendation adopted*, 2022 WL 1487042 (D. Ariz. May 11, 2022).

"A claim for individual liability under [Section] 1981 requires some affirmative link to causally connect the actor with the discriminatory action." *Elmatboly v. Ariz. State Univ.*, No. 05-CV-3518, 2009 WL 10674070, at *6 (D. Ariz. Apr. 30, 2009) (internal quotations omitted).  "A claim alleging individual liability under [Section] 1981 must therefore be predicated on the actor's personal involvement in the adverse decision."  *Takieh v. Banner Health*, 515 F. Supp. 3d 1026, 1048 (D. Ariz. 2021), *aff'd*, No. 21-15326, 2022 WL 474170 (9th Cir. Feb. 16, 2022) (internal quotation marks omitted).

31

### b.    Claims Against Thompson and Fisher

Lee's allegations concerning the Individual Defendants focus largely on Thompson and Fisher, and he makes similar (in fact, nearly identical) allegations for both.  Accordingly, the Court's analysis begins there.  In his Amended Complaint, Lee alleges that Thompson and Fisher overly-scrutinized his work, undermined his team and authority, required him to perform additional tasks presumably not required of his peers, made "belittling and condescending remarks" about him to his subordinate agents, and excluded him from discussions.  Dkt. No. 13 ¶¶ 68–74, 76, 92, 150.  He further alleges that Thompson and Fisher selectively enforced company rules to discipline him for timekeeping discrepancies due to his race and in retaliation for his racial discrimination complaint against Fisher.  *Id*. ¶ 96.

These allegations contain several deficiencies.  First, much of the conduct Lee attributes to Thompson and Fisher does not, on its face, identify any racially discriminatory motive.  Merely stating that Thompson and Fisher were overly-critical, demanding, or even rude towards Lee does not state a Section 1981 claim absent allegations that establish Thompson and Fisher acted "*because of* [Plaintiff's] race or race-related complaint."  *Jones*, 2025 WL 2802180, at *5 (emphasis in original).  To be sure, Lee repeatedly states that at least Fisher was racially motivated, but merely asserting as much in a conclusory fashion is not enough to state a claim.  *Ashcroft*, 556 U.S. at 678; *see also Bastidas v. Good Samaritan Hosp.*

*LP*, 774 F. App'x 361, 363 (9th Cir. 2019) ("Though the [complaint] is replete with allegations that white physicians were treated differently than plaintiff, these bare allegations do not sufficiently point to underlying facts to be entitled to the presumption of truth." (internal quotation marks omitted)).  Moreover, even if Lee's allegations *did* adequately state that racial discrimination motivated Fisher and Thompson, he would still fail to state a claim because he has neither alleged nor shown it was the *but for* cause.  *See Domino v. Kentucky Fried Chicken*, No. 19-CV-08449, 2020 WL 5847306, at \*2 (N.D. Cal. Oct. 1, 2020) (holding that "allegations that racial discrimination was a 'motivating factor' in a defendant's actions are insufficient to plead a claim" absent allegations that "racial discrimination was the but-for cause").

Second, although Lee may be attempting to allege but-for causation by claiming there were similarly-situated, non-African American employees treated differently, Dkt. No. 13 ¶ 96, these allegations still fail to state a claim against Fisher or Thompson.  "[I]ndividuals are similarly situated when they have similar jobs and display similar conduct," including "engag[ing] in problematic conduct of comparable seriousness." *Vasquez v. Cty. of L.A.*, 349 F.3d 634, 641 (9th Cir. 2003).  As noted with respect to his Title VII claims (*see* Discussion, Section II(a)(i), *supra*), Lee fails to allege that supervisory employees who were not disciplined had agent complaints against them, as Lee did.  Moreover, one of the

non-disciplined employees to whom Lee otherwise compares himself is, in fact, African American too. Dkt. No. 13 ¶ 52.

Lee attempts to make other allegations in support of his Section 1981 claim that bear comment. At various points, Lee refers to the actions of "Defendants" without specifying to which individual an allegation pertains. *See, e.g.*, Dkt. No. 13 ¶ 100 ("On December 9, 2023, Defendants further retaliated against Lee. . . ."). Generalized pleadings of this kind are insufficient. *See Jones*, 2025 WL 2802180, at 5 (dismissing Section 1981 claims where plaintiff merely "generically allege[d] that all defendants participated in a legal violation"); *see also Destfino v. Reiswig*, 630 F.3d 952, 958 (9th Cir. 2011) (holding that "'everyone did everything' allegations" are insufficient to satisfy federal pleading standards). Accordingly, the allegations that refer collectively to "Defendants" without specification are not enough to save Lee's claims and may not be repeated in any amendment.

Lee also attempts to supplement his Amended Complaint by providing a copy of the Rising Phoenix employee handbook with his opposition to the motion to dismiss, claiming that it reveals the Individual Defendants failed to follow proper procedure in disciplining him. Dkt. Nos. 52, 52-2. Lee requests that the Court convert the Individual Defendants' motion to dismiss to a motion for summary judgment so that it might consider the handbook in determining his Section 1981 claims. Dkt. No. 52 at 1.

The Court declines to do so. The handbook is not attached to the pleadings, is not incorporated by reference, is not judicially noticeable, and does not form the basis of Lee's claim. *Cf. Ritchie*, 342 F.3d at 908; *Benton v. Exec. Hotel Seattle LLC*, No. C20-1504, 2021 WL 764135 at *3 (W.D Wash. Feb. 26, 2021). The Amended Complaint refers to the handbook only once, and only to note that it "prohibits employees from working off the clock." Dkt. No. 13 ¶ 75. This brief reference has no evident bearing on Lee's Section 1981 claim. Accordingly, the Court will not consider evidence from the employee handbook at this time.

Because Lee has not stated a Section 1981 discrimination or retaliation claim against Thompson or Fisher, the Court dismisses these claims without prejudice and with leave to amend.

### c.    Other Individual Defendants

Lee devotes far less attention in his Amended Complaint to his claims against Burke, Nichols, or Niles, the remaining Individual Defendants. For Burke, Lee only alleges that she was present at a December 1, 2023 meeting in which Lee was confronted with alleged timekeeping discrepancies and agent complaints. Dkt. No. 13 ¶ 96. That alone falls far short of stating a claim of any kind against Burke. Lee, for instance, does not allege that Burke engaged in any discriminatory conduct or played any decision-making role in the allegedly discriminatory actions taken by others. *See Takieh*, 515 F. Supp. 3d at 1048 (dismissing Section 1981 claim where

35

complaint was "devoid of factual allegations showing that [defendant] was a member of any decision-making body" responsible for plaintiff's alleged injuries); *Jones*, 2025 WL 2802180, at *6 (plaintiff failed to state Section 1981 claim because the "allegations do not suggest that [defendant] had any control over the decision to terminate").

The same is true for Nichols and Niles, whom Lee states merely "ratified the discriminatory conduct," without elaboration. Dkt. No. 13 ¶ 162. Lee describes Nichols and Niles as human resources managers, *id.* ¶ 20, but otherwise provides no detail at all as to their conduct. To state a Section 1981 claim, Lee was obliged to allege some personal involvement by Nichols and Niles, *Elmatboly*, 2009 WL 10674070, at *6, but has failed to do so.

Given the absence of any substantive allegations concerning Burke, Nichols, or Niles, Lee fails to state Section 1981 claims against any of them. Accordingly, the Court grants dismissal without prejudice and with leave to amend.[11]

## CONCLUSION

For the reasons stated, Defendants' motions to dismiss, Dkt. Nos. 35, 39, 43, are GRANTED. Lee's Section 1981 claims against DHS and his Title VII gender

---

[11]The Individual Defendants also argue that if Lee asserts Section 1981 claims for gender discrimination and hostile work environment, those too must be dismissed. Dkt. No. 43-1 at 10, 15. Examining the Amended Complaint, however, Lee does not appear to assert such claims within the context of Section 1981. *Cf.* Dkt. No. 13 ¶¶ 109–42 (gender discrimination under Title VII). The Court thus does not address these arguments any further.

discrimination claims against the Corporate Defendants are denied with prejudice and without leave to amend.  The Court grants leave to amend all *other* claims, consistent with this Order.  Should Lee wish to amend his pleadings, he must file a standalone Second Amended Complaint that does not incorporate or rely on his previous filings no later than November 17, 2025.  If no amended pleading is filed by that date, this action will be dismissed and closed without further notice.

IT IS SO ORDERED.

Dated: October 27, 2025 at Honolulu, Hawaiʻi.



Derrick K. Watson
Chief United States District Judge

---

*Wilfred L. Lee, Jr. vs. Rising Phoenix Holdings, Corp., et al*; Civil No. 25-00083
DKW-RT; **ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS**