IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI‘I

| | |
|---|---|
| WILFRED L. LEE, JR.<br><br>          Plaintiff,<br><br>     v.<br><br>RISING PHOENIX HOLDINGS<br>CORP., *et al.*,<br><br>          Defendants. | Case No. 25-cv-00083-DKW-RT<br><br>**ORDER (1) GRANTING<br>DEFENDANTS' MOTIONS TO<br>DISMISS; and (2) DENYING<br>PLAINTIFF'S REQUEST FOR<br>JUDICIAL NOTICE**[1] |

On November 24, 2025, Defendants Rising Phoenix Holdings Corporation, TB Customer Relations LLC ("TBCR"), Brooke Fisher, and Melissa Burke moved to dismiss *pro se* plaintiff Wilfred L. Lee's Second Amended Complaint ("SAC"), asserting that Lee, once again, fails to state a claim. Dkt. No. 69. Lee opposes the motion, Dkt. No. 74, and Defendants have replied, Dkt. No. 77.

Having reviewed the Complaint, the parties' briefs, and the record generally, the Court agrees that dismissal is appropriate. Accordingly, the motion to dismiss is GRANTED with prejudice and without leave to amend, as explained below.

---

[1]Pursuant to Local Rule 7.1(c), the Court finds these matters suitable for disposition without a hearing.

## FACTUAL & PROCEDURAL BACKGROUND

### I.    The Second Amended Complaint

The following facts are taken from Lee's SAC and various exhibits Lee attached to his pleadings. Dkt. No. 68.[2]

TBCR, a Hawaiʻi-based company, provides disaster management services, including for the August 2023 Lahaina, Maui wildfires. *Id*. ¶ 7. Rising Phoenix is TBCR's parent company. *Id*. ¶ 6. On August 28, 2023, Lee, an African-American male, accepted a call center supervisor position with TBCR. *Id*. ¶ 29. In this role, Lee reported directly to Fisher, TBCR's project manager. *Id*. ¶ 34. Lee's duties included "managing agents and maintaining regulatory compliance," and his ability to perform his work was reliant upon continued access to his Microsoft Teams account, timekeeping software, company email, and company-issued laptop. *Id*. ¶ 30.

On November 7, 2023, Lee notified TBCR and Rising Phoenix that he suffered from Computer Vision Syndrome, an alleged disability which limited his ability to work on a computer for extended periods. *Id*. ¶ 45. Lee asked that he be allowed to use the Microsoft Teams mobile app to conduct meetings and monitor

---

[2] The Court has considered the exhibits when evaluating Defendants' motion because Lee not only refers to them and their contents within his allegations but also attaches the exhibits to his SAC. *See U.S. v. Ritchie*, 342 F.3d 903, 907–08 (9th Cir. 2003) (holding that courts may incorporate materials outside the complaint by reference when they are referred to by the plaintiff and "form[] the basis of the plaintiff's claim").

agents in lieu of his work computer, "to lessen eyestrain."  Dkt. No. 68 ¶ 49.  TBCR requested that Lee provide a completed certification form from his health care provider affirming the existence of his disability and the necessity of his proposed accommodation.  Dkt. No. 68-2 at 2 (pdf pagination).  Lee's doctor, however, declined to approve the accommodation that he requested because "using [a] mobile device is the same as using [a] computer."[3]  Instead, Lee's doctor recommended regular breaks from screentime.  Dkt. No. 69-5 at 2.  On November 16, 2023, TBCR denied the accommodation request, stating that Lee's doctor had not certified that using the mobile app was "a reasonable accommodation" and encouraging Lee to instead "speak with your supervisor about using Teams" or have his doctor certify that taking regular breaks was a viable alternative.  Dkt. No. 68-2 at 6.

On November 20, 2023, Fisher sent an email to TBCR supervisors in which she warned about discrepancies in employee time records and unexcused absences from work.  *Id.* ¶ 38.  The email, which Lee attaches to his SAC, does not specify which employees, if any, were the target of Fisher's warnings, *see* Dkt. No. 68-5, but Lee alleges that they were Genierose Piho and Daphne Henion, "non-African American employees" who were "submitting inconsistent time records" and

---

[3]While Lee provides copies of his accommodation request and TBCR's email responses, *see* Dkt. No. 68-2, he does not include the email from his doctor's office, which Defendants instead attach to their motion to dismiss.  Dkt. No. 69-5.  The Court considers the doctor's email because its contents were referred to within the accommodation-request emails that Lee provided as part of his SAC.  *See Ritchie*, 342 F.3d at 907–08.

"frequently absent and unresponsive for 2 hours or more during work hours," Dkt. No. 68 ¶¶ 38, 42–43. Despite this, Piho and Henion were not disciplined and instead received promotions over Lee. *Id*. ¶ 43.

On November 21, 2023, Lee submitted a disability and race discrimination complaint to Fisher, alleging that Fisher had "a problem working with African American Men." *Id*. ¶ 52. On November 30, 2023, Lee submitted an additional disability and race discrimination complaint, alleging disparate treatment between himself and non-African American employees. *Id*. ¶ 53. On December 1, 2023, Burke—an HR manager for Rising Phoenix—placed Lee on indefinite suspension and demoted him to a contact center agent, *id*. ¶¶ 54–55, despite Lee having faced no disciplinary issues at work in the prior three months, *id*. ¶¶ 32–33.

On December 8, 2023, Defendants reinstated Lee. *Id*. ¶ 58. Burke, however, directed Lee to use his personal mobile phone, email account, and laptop to conduct his duties, as opposed to the "dedicated, secure equipment" assigned to Piho and Henion, and blocked Lee's access to the company Teams account and timesheet system. *Id*. ¶¶ 56–58. Lee claims this decision, along with his suspension and demotion, were a "pattern of severe disciplinary and retaliatory actions" taken in response to Lee's accommodation request and discrimination complaints. *Id*. ¶ 59.

## II.    Procedural History

On February 25, 2025, Lee filed his Complaint, followed by his First Amended Complaint ("FAC") in April 2025.  Dkt. Nos. 1, 13.  On October 27, 2025, the Court dismissed the FAC with leave to amend.  Dkt. No. 66.  On November 10, 2025, Lee filed the SAC, asserting the following claims: (1) disability discrimination in violation of the ADA against TBCR and Rising Phoenix (the "Corporate Defendants"); (2) retaliation in violation of the ADA against TBCR; (3) retaliation in violation of Title VII against TBCR and Rising Phoenix; and (4) retaliation in violation of 42 USC § 1981 against all Defendants ("Counts 1–4").  Dkt. No. 68.

On November 24, 2025, Defendants moved to dismiss the SAC, arguing that Lee failed to state a claim or, alternatively, failed to exhaust claims relating to his demotion.[4]  Dkt. No. 69.  Lee opposes, responding that his claims are fully exhausted and adequately pled.  Dkt. No. 74.  Lee also requested judicial notice of email messages and Teams notifications he claims support his opposition.  Dkt. No. 76.  Defendants' reply asserts that Lee failed to meaningfully respond with respect to the sufficiency of his pleadings, and Defendants' oppose Lee's request for judicial notice.  Dkt. Nos. 77, 83.

---

[4]The Court does not address Defendants' exhaustion arguments because, as explained herein, the motion to dismiss is granted for failure to state a claim.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) authorizes the Court to dismiss a complaint that fails "to state a claim upon which relief can be granted." Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). Pursuant to *Ashcroft v. Iqbal*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In addition, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft*, 556 U.S. at 678. Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Factual allegations that only permit the court to infer "the mere possibility of misconduct" do not show that the pleader is entitled to relief as required by Rule 8(a)(2). *Id.* at 679.

The Court liberally construes a pro se pleading. *Eldridge v. Block*, 832 F.2d 1132, 1137 (9th Cir. 1987). However, the Court cannot act as counsel for a pro se litigant, such as by supplying the essential elements of a claim. *Pliler v. Ford*, 542

U.S. 225, 231 (2004); *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

## DISCUSSION

Before the Court is Defendants' motion to dismiss, Dkt. No. 69, and Lee's request for judicial notice, Dkt. No. 76. The Court addresses each below.

## I.    Count 1: Failure to Accommodate

Lee's first count is an ADA disability-discrimination claim against TBCR and Rising Phoenix, based on the Corporate Defendants' refusal to approve Lee's November 2023 accommodation request. Dkt. No. 68 ¶¶ 65–77.

Discrimination under the ADA includes the failure to make a "reasonable accommodation". 42 U.S.C. § 12112(b)(5)(A). A plaintiff establishes a prima facie case of failure to accommodate under the ADA by showing: (1) they are disabled; (2) they are a qualified individual able to perform the essential duties of the job with reasonable accommodations; and (3) they suffered an adverse employment action because of the disability. *Samper v. Providence St. Vincent Med. Ctr.*, 675 F.3d 1233, 1237 (9th Cir. 2012). ADA discrimination claims are "evaluated under a but-for causation standard," meaning that the plaintiff "must show that the adverse employment action would not have occurred but for the disability." *Murray v. Mayo Clinic*, 934 F.3d 1101, 1105–07 (9th Cir. 2019).

After an employer becomes aware of an employee's disability, the employer and employee must engage in a good faith "interactive process" to find a reasonable accommodation, which "requires: (1) direct communication between the employer and employee to explore in good faith the possible accommodations; (2) consideration of the employee's request; and (3) offering an accommodation that is reasonable and effective." *U.S. Equal Emp't Opportunity Comm'n v. UPS Supply Chain Solutions*, 620 F.3d 1103, 1110 (9th Cir. 2010) (quotation marks and citation omitted). "Liability for failure to provide reasonable accommodations ensues only where the employer bears responsibility for the breakdown in the interactive process." *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1089 (9th Cir. 2002) (internal quotation marks omitted).

Here, Lee claims that he suffered from Computer Vision Syndrome, and that the Corporate Defendants failed to accommodate his disability. Dkt. No. 68 ¶ 68. Lee further claims that the Corporate Defendants "failed to engage in any further good-faith interactive process" after denying his accommodation. *Id.* ¶ 50. In support of his argument, Lee provides an email chain in which the Corporate Defendants denied his request to use his cellular phone, rather than his computer, while working. Dkt. No. 68-2. Lee fails to acknowledge, however, that this evidence fatally undercuts the plausibility of his claim.

The emails Lee provides indeed show that the Corporate Defendants rejected Lee's proposed accommodation. *Id*. at 6. But they also reveal the reason: because Lee's own doctor declined to endorse that accommodation as reasonable. *Id*. When asked to certify Lee's accommodation request, his doctor responded that using a cellular phone would simply cause the same eyestrain as using a computer and instead suggested that regular breaks might reduce Lee's discomfort. Dkt. No. 69-5 at 2. Given that Lee's own doctor stated that switching from a computer screen to a cellular phone screen would not be effective, Lee's proposed accommodation involving the switch was plainly not a reasonable one. *See Humphrey v. Mem. Hosps. Ass'n,* 239 F.3d 1128, 1137 (9th Cir. 2001) ("An appropriate reasonable accommodation must be effective in enabling the employee to perform the duties of the position.").

The claim that the Corporate Defendants failed to engage in a good-faith interactive process is similarly belied by the evidence Lee provides. After rejecting Lee's accommodation, the Corporate Defendants did not simply terminate the discussion. Rather, they told Lee that he could instead take regular breaks from screentime if that accommodation was certified by his healthcare provider. Dkt. No. 68-2 at 6. There is no indication in the record that Lee followed up with this proposal—in other words, if there was a breakdown in the interactive process, the evidence does not point the blame at Defendants. *Zivkovic*, 302 F.3d at 1089. Lee

certainly might have preferred his original proposal to switch to a cellular phone, but the Corporate Defendants were not obliged to provide him the exact accommodation he requested. *Id*. ("An employer is not obligated to provide an employee the accommodation he requests or prefers, the employer need only provide some reasonable accommodation.")

In short, the evidence Lee himself provides does not support the plausibility of his failure-to-accommodate claim. The Court therefore grants the motion to dismiss as to Count 1.

## II.    Count 2: ADA Retaliation

To allege retaliation under the ADA, a plaintiff must establish "[(1)] that he or she was engaged in a protected activity, [(2)] that he or she suffered an adverse action, and [(3)] that there is a causal link between the two." *T.B. ex rel. Brenneise v. San Diego Unified Sch. Dist.*, 806 F.3d 451, 473 (9th Cir. 2015) (internal quotation marks omitted). An adverse employment action is any action "reasonably likely to deter employees from engaging in protected activity." *Ray v. Henderson*, 217 F.3d 1234, 1243 (9th Cir. 2000). An ADA retaliation claim requires a plaintiff to show his disability was the but-for cause of the alleged adverse action. *See T.B.*, 806 F.3d at 473 (finding that the "more stringent" but-for causation standard applies to ADA retaliation claims).

Lee asserts a claim of ADA retaliation against TBCR, claiming that he was suspended and demoted as a result of his November 2023 accommodation request. Dkt. No. 68 ¶¶ 74–82.  Lee points to two factors supporting his retaliation claim: the lack of adverse actions against similarly-situated, non-disabled employees and temporal proximity. *Id*. ¶ 79.  Because temporal proximity alone is not determinative of the viability of a retaliation claim,[5] the Court focuses on Lee's comparator argument.

Lee argues that his suspension and demotion were for retaliatory reasons because other, non-disabled employees with poor work performances were not disciplined. *Id*. ¶¶ 43, 79.  The ADA permits plaintiffs to establish discrimination through evidence of favorable treatment towards similarly-situated, non-disabled employees, *Marziano v. Cnty. of Marin*, 2010 WL 3895528, at *7 (N.D. Cal. Oct. 4, 2010), but a plaintiff must do so with non-conclusory allegations, *see Johnson v. Target*, 2024 WL 579075, at *3 (D. Ariz. Feb. 13, 2024).  The obligation to include non-conclusory allegations extends to showing that comparators are similarly situated "in all material respects."  *Moran v. Selig*, 447 F.3d 748, 755 (9th Cir. 2006).[6]  "[I]ndividuals are similarly situated when they have similar jobs and display

---

[5]*Coszalter v. City of Salem*, 320 F.3d 968, 978 (9th Cir. 2003); *Ly v. Paragon Tech. & Dev. Inc.*, 2019 WL 4394536, at *5 (D. Ariz. Sept. 13, 2019) ("[M]ere temporal proximity to an adverse action doesn't necessarily make a claim plausible").

[6]The standards for discrimination and retaliation claims under the ADA and Title VII are the same; as a result, cases analyzing both statutes are instructive.  *See E.E.O.C. v. Luce, Forward, Hamilton & Scripps*, 303 F.3d 994, 1004–05 (9th Cir. 2002).

similar conduct," *Vasquez v. Cnty. of Los Angeles*, 349 F.3d 634, 641 (9th Cir. 2003), including conduct that is of "comparable seriousness," *Norton v. PHC-Elko, Inc.*, 46 F. Supp. 3d 1079, 1088 (D. Nev. 2014), *aff'd*, 673 F. App'x 714 (9th Cir. 2016).

Lee compares his conduct to that of Piho and Henion, two non-disabled TBCR supervisors who repeatedly filed inconsistent timesheets and took unapproved absences from work. According to Lee, despite these faults, neither comparator faced disciplinary issues like he did. Dkt. No. 68 ¶¶ 32–33, 38, 42–43. In fact, Lee asserts that Piho and Henion were promoted. *Id*. ¶ 43.

The Court first observes that the facts underlying Lee's comparator allegations are not supported by the evidence on which he relies. Lee claims that he knew Piho and Henion were committing timesheet violations because of the November 20, 2023 email sent by Fisher to multiple supervisors, in which she warns about time record discrepancies. Dkt. No. 68, ¶ 38. But this email does not specify which supervisors were involved in the discrepancies or even if the culprits were supervisors at all. *Id*. at Exh. J; *see* Dkt. No. 68-5. Although the Court must generally take Lee's pleadings as true for purposes of a Rule 12 motion, it is not obliged to accept allegations that they are conclusory or contradicted by the record. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

Moreover, even if the Court accepted Lee's allegations regarding Piho and Henion, there remains a larger problem. As Defendants point out, Lee omits

important details from his SAC.  Dkt. No. 69-1 at 16–17.  In his FAC, Lee stated

that the reasons for his demotion and suspension—the retaliatory conduct he now

complains of—were "timekeeping inaccuracies *and complaints from agents*."[7]  Dkt.

No. 13, ¶¶ 80, 96 (emphasis added).  His SAC removes the "complaints from agents"

reference, presumably to bring him in line with his two comparators.

Defendants ask the Court to take judicial notice of these earlier-filed pleadings

allegations, despite Lee having filed the operative SAC.  Dkt. No. 69-1 at 6 n.2.

Typically, an amended complaint supersedes earlier versions.  *See Ferdik v.*

*Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992).  But although "there is nothing in the

Federal Rules of Civil Procedure to prevent a party from filing successive pleadings

that make inconsistent or even contradictory allegations," *PAE Gov't Servs., Inc. v.*

*MPRI, Inc.*, 514 F.3d 856, 860 (9th Cir. 2007), courts have drawn a distinction

between *contradictory* allegations and *omitted* allegations.  Where a party

"*omits* previously-pled material information that harms [the party's] case," courts

treat those omitted allegations "as judicial admissions."  *Jackson v. Loews Hotels,*

*Inc.*, 2019 WL 6721637, at *3 (C.D. Cal. July 24, 2019) (emphasis in original) (citing

*Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988) ("Factual

---

[7]Specifically, an agent complained that Lee had unfairly "questioned her training and competency," which prompted Lee's superiors to warn him about his "tone in chat-based interactions with female agents."  Dkt. No. 13 ¶¶ 134–35.  Lee argues the warning was "disproportionate and unwarranted," but does not deny that the complaints were made or that his conduct was as-described.  *Id.*

assertions in pleadings and pretrial orders, unless amended, are considered judicial admissions conclusively binding on the party who made them."")); *see also Huey v. Honeywell, Inc.*, 82 F.3d 327, 333 (9th Cir. 1996) (holding that although defendant "amended its answers," the allegations contained in the original answer "are still admissible" and could be considered by the court).

With this in mind, Lee cannot sidestep his prior admission.  Comparison to a similarly-situated employee is dependent upon the comparator being similar in all material respects, including conduct.  *Vasquez*, 349 F.3d at 641.  Lee's previous allegations make such a comparison impossible.  Piho and Henion were, according to Lee, filing inaccurate timesheets.  Dkt. No. 68 ¶¶ 38, 42–43.  But Lee previously alleged that he was disciplined not only for timekeeping errors, but for complaints from the customer service agents whom he supervised at the call center.  Dkt. No. 13, ¶ 80.  There is no indication in the record that Piho and Henion faced the same agent complaints and, therefore, no basis to say that Lee's conduct was "of comparable seriousness."  *Norton*, 46 F. Supp. 3d at 1088.  The Court made this deficiency clear to Lee in its Order dismissing the FAC.  *See* Dkt. No. 66 at 17–18, 28.  Rather than curing his pleadings, Lee elected to simply drop the details damaging to his claims.  Such an omission, however, offers him no refuge.  Lee's ADA retaliation claim is dismissed.

## III.    Title VII Retaliation

An employer may not discriminate against an employee because the employee has opposed an employment practice made unlawful by Title VII.  *See* 42 U.S.C. § 2000e-3(a) ("It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice [prohibited by Title VII] . . . or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]."); *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 59 (2006) ("Title VII's anti-retaliation provision forbids employer actions that discriminate against an employee . . . because he has opposed a practice that Title VII forbids or has made a charge, testified, assisted, or participated in a Title VII investigation, proceeding, or hearing." (citations and quotation marks omitted)).

To state a Title VII retaliation claim, a plaintiff must assert (1) that he was engaged in a protected activity opposing an unlawful employment practice; (2) that he suffered an adverse employment action, and (3) that there was a causal link between his activity and the adverse employment action.  *Freitag v. Ayers*, 468 F.3d 528, 541 (9th Cir. 2006).  As with ADA retaliation, the plaintiff must show "that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer."  *Univ. of Tex. Southwestern Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013) (concluding that a plaintiff making a retaliation claim

- 15 -

under Title VII "must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer").

Lee asserts that his demotion and suspension by the Corporate Defendants were retaliation for his racial discrimination complaints, in violation of Title VII. Dkt. No. 68, ¶¶ 83–89. However, beyond temporal proximity, the sole allegation Lee provides to show causation is that Piho and Henion—who were not African-American—were not disciplined in the manner Lee was despite their own timekeeping discrepancies. *Id.*, ¶ 88. For the same reasons the Court provided above with respect to ADA retaliation, the comparison to Piho and Henion is unavailing. *See* Discussion, Section II, *supra*. Piho and Henion might have committed similar timekeeping violations, but the record does not show that they were subject to complaints from their subordinates as Lee was. These employees thus cannot serve as comparators for the purpose of establishing but-for causation. *See Al-Raheem v. Covenant Care*, 2012 WL 4863711, at *4 (E.D. Cal. Oct. 12, 2012) ("The cornerstone of the inference of racial discrimination being the cause of disparate treatment is the similarity between the [p]laintiff and a larger group of workers who are facing the *same* situation." (emphasis added)).[8] In the absence of such a showing

---

[8]Lee's FAC mentions another African-American supervisor who "engaged in comparable or greater timekeeping deficiencies" and yet was not disciplined. Dkt. No. 13,    ¶ 52. Defendants argue that the Court should consider this other employee, despite Lee having omitted the allegation from his SAC. Dkt. No. 69-1 at 6–7. The Court notes this allegation, just as it agreed to take notice of the agent complaints Lee similarly omitted, *see* Discussion, Section II, *supra*; *Jackson*, 2019 WL 6721637, at *3.

of causation, Lee's Title VII retaliation claims must be dismissed. *See Petersen v. Cnty. of Stanislaus*, 2012 WL 4863800, at *4 (E.D. Cal. Oct. 12, 2012) (dismissing both Title VII and ADA claims for "fail[ing] entirely to allege a causal connection between [p]laintiff's protected reports and protestations and the adverse actions taken against her, beyond [] conclusory statement[s]").

## IV.    Section 1981 Retaliation

Section 1981 "prohibits discrimination in the 'benefits, privileges, terms and conditions' of employment." *Surrell v. California Water Serv. Co.*, 518 F.3d 1097, 1103 (9th Cir. 2008) (quoting, in part, 42 U.S.C. § 1981(b)). "When analyzing [Section] 1981 claims," courts "apply the same legal principles as those applicable in a Title VII . . . case." *Surrell*, 518 F.3d at 1103 (internal quotation marks and citations omitted). Retaliation under Section 1981 therefore follows the same standards for causation as Title VII: "[t]he protected activity must be the but-for cause of the adverse employment action." *Romero v. Tucson Unified Sch. Dist.*, No. 2022 WL 1491104, at *5 (D. Ariz. Apr. 22, 2022), *report and recommendation adopted*, 2022 WL 1487042 (D. Ariz. May 11, 2022).

A plaintiff asserting a retaliation claim under Section 1981 must "allege facts that, taken as true, would plausibly show that [he] was retaliated against either because [he] made a complaint of race-based discrimination or because [he] 'complained about a violation of another person's' right to be free from such

- 17 -

discrimination." *Jones v. Rising Phoenix Holdings Corp.*, 2025 WL 2802180, at *8 (D. Haw. Oct. 1, 2025) (quoting *CBOCS Wests, Inc. v. Humphries*, 553 U.S. 442, 445 (2008)). "A claim for individual liability under [Section] 1981 requires some affirmative link to causally connect the actor with the discriminatory action." *Elmatboly v. Ariz. State Univ.*, 2009 WL 10674070, at *6 (D. Ariz. Apr. 30, 2009) (internal quotations omitted). "A claim alleging individual liability under [Section] 1981 must therefore be predicated on the actor's personal involvement in the adverse decision." *Takieh v. Banner Health*, 515 F. Supp. 3d 1026, 1048 (D. Ariz. 2021), *aff'd*, No. 21-15326, 2022 WL 474170 (9th Cir. Feb. 16, 2022) (internal quotation marks omitted).

Lee asserts retaliation claims pursuant to Section 1981 against all Defendants. The Court will first address the Corporate Defendants, then Fisher and Burke (the "Individual Defendants").

### a.   Corporate Defendants

As provided above, the Court has determined that Lee failed to state a retaliation claim against the Corporate Defendants under either the ADA or Title VII. *See* Discussion, Sections II and III, *supra*. Because Section 1981 retaliation claims follow the same framework, Lee's Section 1981 retaliation claims meet the same fate. *See Jones*, 2025 WL 2802180, at *9 (analyzing Title VII and Section

1981 retaliation and discrimination claims under the same standards and dismissing on the same grounds).

### b.   Individual Defendants

As for the Individual Defendants, Lee claims that Fisher and Burke both retaliated against him, using his demotion and suspension as punishment for his racial discrimination complaint.  Dkt. No. 68 ¶¶ 94–95.  Lee alleges that Fisher "exercised authority over the disciplinary process" and was the decision-maker who promoted Piho and Henion while disciplining Lee.  *Id.* ¶ 94.  Burke, meanwhile, "personally implemented the demotion" and "refused to correct the denial of essential system access after reinstatement." *Id.*

These claims must be dismissed for the same reason as those against the Corporate Defendants: failure to plausibly allege that Lee's race-based complaint was the but-for cause of Fisher and Burke's actions.  *Jones*, 2025 WL 2802180, at *5.  The only evidence of a retaliatory motive that Lee provides is that Piho and Henion were not disciplined as Lee was.  But—as the Court has already explained—this assertion is not enough to state a claim.  *See* Discussion, Sections II and III, *supra*.  Piho and Henion did not face the same agent complaints that Lee did, and so neither is a sufficiently similar comparator. *Vasquez*, 349 F.3d at 641.  Lee otherwise provides no allegations suggesting a racial or retaliatory motive for Fisher and Burke's actions, outside of baldly stating that such a motive existed—conclusory

assertions that cannot save his claims. *Ashcroft*, 556 U.S. at 678; *see also Bastidas v. Good Samaritan Hosp. LP*, 774 F. App'x 361, 363 (9th Cir. 2019) ("Though the [complaint] is replete with allegations that white physicians were treated differently than plaintiff, these bare allegations do not sufficiently point to underlying facts to be entitled to the presumption of truth." (internal quotation marks omitted)).

## V.    Leave to Amend

When a complaint fails to state a plausible claim, leave to amend should be given when "justice so requires." Fed.R.Civ.P. 15(a)(2).  However, justice does not require leave to amend when (1) it would prejudice an opposing party, (2) it is sought in bad faith, (3) it would produce an undue delay in litigation, (4) it would be futile, or (5) there has been repeated failure to cure a deficiency. *Abagninin v. AMVAC Chem. Corp.*, 545 F.3d 733, 742 (9th Cir. 2008); *AmerisourceBergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946, 951 (9th Cir. 2006).

Here, the Court has already given Lee multiple opportunities to amend his pleadings. *See* Dkt. Nos. 13, 66, 68.  In its prior order, the Court informed Lee of a number of deficiencies that plagued his FAC. Dkt. No. 66.  Rather than amend his pleadings to cure those problems, Lee opted to obscure them by selectively omitting damaging facts while keeping the core of his complaint intact.  Because the Court already afforded Lee the chance to fix his complaint, it declines to extend that leave again. *See Ascon Props., Inc. v. Mobil Oil Co.,* 866 F.2d 1149, 1160 (9th Cir. 1989)

("[T]he district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint."). The SAC is therefore dismissed with prejudice and without leave to amend.

## VI. Request for Judicial Notice

Lee requests that the Court take judicial notice of a chain of emails and Teams messages between himself and Burke, which he claims will go to show the "sequence of events" prior to his reinstatement and reinforce the allegations of his SAC. Dkt. No. 76 at 2. Under Fed. R. Evid. 201, a court may take judicial notice of facts that are "not subject to reasonable dispute" because it is either (1) "generally known within the trial court's territorial jurisdiction" or (2) capable of accurate and ready determination by resort to sources "whose accuracy cannot reasonably be questioned."

Judicial notice is not warranted here. First, the relevance of the proposed documents is not clear. The messages show merely that meetings between Lee and human resources officers took place, but do not appear to be material to the issues of retaliation or causation which are central to the motion to dismiss. *See Santa Monica Food Not Bombs v. City of Santa Monica*, 450 F.3d 1022, 1025 n.2 (9th Cir. 2006) (declining to take judicial notice of irrelevant information); *Holley v. Tripp*, 2024 WL 3966444, at *4 (D. Idaho Aug. 27, 2024) (declining to take judicial notice

of facts that bore "no discernible relevance to the issues raised in the motion to dismiss").

Moreover, the proposed facts are not appropriate for judicial notice. Typically, judicial notice is used to take heed of documents "already in the public record," such as those filed in other courts, published by agencies, or made readily available on websites. *Minor v. FedEx Off. & Print Servs., Inc.*, 78 F. Supp. 3d 1021, 1027 (N.D. Cal. 2015) (collecting cases). The email chain and Teams messages Lee provides do not contain matters either generally known within the Court's territorial jurisdiction or capable of determination by accurate sources. *See id.* (denying request for judicial notice of an email chain). Even if they did, the Court also cannot take notice of facts which are open to reasonable dispute. Fed.R.Civ.P. 201.

Accordingly, Lee's request for judicial notice is denied.

## <u>CONCLUSION</u>

For the reasons set forth herein, Defendants' Motion to Dismiss Second Amended Complaint, Dkt. No. 69, is GRANTED, and the Second Amended Complaint is DISMISSED WITH PREJUDICE. Lee's Request for Judicial Notice, Dkt. No. 76, is DENIED.

The Clerk is instructed to enter Judgment pursuant to this Order in favor of Defendants.  The Clerk is then instructed to close this case.

IT IS SO ORDERED.

DATED: February 17, 2026 at Honolulu, Hawai'i.



Derrick K. Watson
Chief United States District Judge

---

*Wilfred Lee, Jr., v. Rising Phoenix Holdings Corp., et al*; Civil No. 25-00083 DKW-RT; **ORDER (1) GRANTING DEFENDANTS' MOTIONS TO DISMISS; and (2) DENYING PLAINTIFF'S REQUEST FOR JUDICIAL NOTICE**